DeWayne STEWART, Appellant,

v.

SANMINA TEXAS L.P., Sanmina–Sci Corporation, and John R. Sitton, Appellees.

No. 05–03–01688–CV.

Court of Appeals of Texas, Dallas.

Feb. 14, 2005.

---

5. BRG made the same statements in its     amended summary judgment motion.

David S. Jones, Law Office of David S. Jones, Dallas, for Appellant.

Marc Daniel Katz, Robert E. Sheeder, Robert Gilbreath, Jenkens & Gilchrist, P.C., Dallas, for Appellees.

Before Justices BRIDGES, MARTIN RICHTER, and LANG.

## OPINION

Opinion by Justice LANG.

In three issues, DeWayne Stewart appeals the trial court's grant of summary judgment in favor of Sanmina Texas L.P., Sanmina–SCI Corporation and John R. Sitton on Stewart's claims for age discrimination and retaliation in violation of chapter 21 of the Texas Labor Code,[1] and breach of contract or quantum meruit for failure to pay certain commissions and expenses. Because we conclude that Stewart has produced evidence raising an issue of fact respecting his claims against the Sanmina corporate entities for age discrimination and breach of contract for failure to pay certain past commissions, we reverse the summary judgment as to those claims and remand them to the trial court for further proceedings. We affirm summary judgment as to the remaining claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Sanmina Texas L.P. manufactures and assembles telecommunications equipment. Sanmina–SCI Corporation is its parent company. In January 1998, Stewart was hired by Golden Eagle Systems, Inc., which was Sanmina Texas L.P.'s predecessor, as a senior account manager in the cable division to sell custom cable and assembly parts. During Stewart's employment, John R. Sitton was regional sales manager and then a director of sales. Sitton supervised Stewart. When Stewart was hired by Golden Eagle, he had over eleven years' experience with 3M Electronic Products Division calling on Motorola and Compaq, and three years' experience with DJ Sales calling on Alcatel as a manufacturer's representative. During Stewart's employment, these accounts and Fujitsu were assigned to Stewart. However, Compaq left the area, and Fujitsu and Alcatel were assigned to other Sanmina employees. Stewart focused his efforts on the Motorola account and the new Motorola "3G project" account. In 2000 and 2001, Sanmina had formal compensation policies and commission payment plans, which applied to Stewart. On March 2, 2001, Sitton informed Stewart that he was laid off because of a reduction in force. Sitton told Stewart his dismissal was based on job performance. Stewart was over forty years old.

Chris Dovidas, a twenty-seven-year-old white male, was hired in July 1999 as a

---

1. Tex. Lab.Code Ann. §§ 21.001–556 (Vernon 1996 & Supp.2004–05).

program manager. He was offered a junior sales position in the sales division November 2000, and was given the Motorola account on March 5, 2001. Dovidas was retained when Stewart was laid off. Also on March 5, 2001, Chuck Steely was hired as a new sales representative. Stewart alleged Steely was a white male in his mid-twenties. It was determined later that, in fact, Steely was over fifty years old when Stewart was laid off. Another employee, Danielle Baril, was retained as a regional sales manager for the southeast region.

After filing a complaint with the Equal Employment Opportunity Commission regarding his allegations of age discrimination and receiving a notice of right to file a civil action from the Texas Commission on Human Rights, Stewart sued the Sanmina corporate entities and Sitton. In his first amended petition, in addition to tort and statutory claims related to his termination, Stewart alleged that, for the period October to December 2000, appellees failed to pay him all sales commissions due, an automobile allowance, a benefit allowance, and a reimbursement for a final cellular telephone bill. He also alleged that, for January to March 2001, appellees failed to pay him sales commissions claimed to be due. Further, Stewart alleged that he was owed commissions, for a period of five years after his layoff, on Motorola projects that he had brought in or had been working on when he was laid off.

Stewart filed his third amended petition to add a claim for retaliation. Specifically, Stewart alleged that, after he had filed his first amended petition, Sanmina Texas L.P. "brought a retaliatory counterclaim against [Stewart] for alleged violation of a Proprietary Information and Inventions Agreement." Stewart alleged that appellees had written threatening letters to his new employer in an apparent attempt to have him terminated or disciplined and have him terminated or disciplined and that, as a result, Stewart had lost income and suffered certain other injuries.

Appellees moved for summary judgment on Stewart's claims on traditional and no-evidence grounds. Appellees supported this motion with, among other documents, affidavits from Sitton and another employee and Stewart's deposition and exhibits. Stewart responded and attached evidence to his response. His evidence included affidavits from former co-workers and his own extensive affidavit, to which he attached various documents and schedules of calculations as to his commission claims. Appellees objected and moved to strike and exclude Stewart's summary judgment evidence. The trial court granted summary judgment on all claims against Sitton and on all remaining claims except the breach of contract or quantum meruit claims. In its order granting summary judgment, the trial court found that "to the extent any summary judgment evidence is mere conclusion or based upon speculation it cannot be considered for purposes of the summary judgment record."

Subsequently, appellees moved a second time for summary judgment on the breach of contract or quantum meruit claims. Stewart responded and attached summary judgment evidence to his response. Appellees objected to Stewart's summary judgment evidence. The trial court overruled appellees' objections to the evidence and granted appellees' second motion for summary judgment. This appeal followed.

## II. STANDARD OF REVIEW

We review a traditional motion for summary judgment under well-established standards: (1) the movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment,

evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); TEX.R. CIV. P. 166a(c). A defendant is entitled to summary judgment if it either: (1) conclusively negates at least one of the essential elements of a cause of action; or (2) conclusively establishes each element of as affirmative defense. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). If the defendant presents sufficient summary judgment evidence to negate one element of a plaintiff's claim, the plaintiff must bring forth evidence sufficient to prove the existence of a genuine issue of material fact with regard to the element challenged by the defendant. *Centeq Realty v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

Rule of civil procedure 166a(i) provides: After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. The motion must state the elements as to which there is no evidence. The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact.

TEX.R. CIV. P. 166a(i).

A no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex.2003), *cert. denied,* —— U.S. ——, 124 S.Ct. 2097, 158 L.Ed.2d 711 (2004). Accordingly, we re-view the evidence in the light most favorable to the nonmovant, disregarding all contrary evidence and inferences. *Id.* at 751 (citing *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997)). A no-evidence point will be sustained when: (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact. *Id.* Thus, a no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *Id.* (citing TEX.R. CIV. P. 166a(i)). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Id.* (citing *Merrell Dow Pharms.*, 953 S.W.2d at 711). Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Id.* (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983)).

"When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious." *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 242 (Tex.2001).

## III. CLAIMS AGAINST SITTON AND OTHER CLAIMS

To begin our analysis, we must determine which of the several claims made by Stewart in the trial court have been brought before us on appeal. The trial court's amended order granting appellees' first motion for summary judgment in part

states: "As to [Stewart's] claims against Defendant John Sitton, individually, the Court finds that the pleadings are conflicting as to whether [Stewart] is or is not seeking relief against such Defendant on all claims, and that considering the above papers [i.e., the motion, response, and objections] in light of the allegations of [Stewart's] Third Amended Petition, summary judgment is proper and should be granted in favor of Defendant John Sitton on the claims made the subject of Defendants' Motion for Summary Judgment." Stewart brings no general issue or argument on appeal as to the propriety of summary judgment on his claims against Sitton. *See Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex.1970) ("The judgment must stand, since it may have been based on a ground not specifically challenged by the plaintiff and since there was no general assignment that the trial court erred in granting summary judgment."). Accordingly, we affirm the grant of summary judgment on all claims against Sitton.

Additionally, we note that appellees moved for and were granted summary judgment on Stewart's claims against all defendants for gender discrimination, intentional infliction of emotional distress, negligent administration of personnel policies, and tortious interference. Because Stewart makes no argument on appeal as to these claims, we affirm summary judgment as to them. *See id.* The issues brought to us on appeal address only Stewart's claims for retaliation, age discrimination, breach of contract, and quantum meruit.

## IV. RETALIATION AND AGE DISCRIMINATION CLAIMS

In his first and second issues, Stewart contends his summary judgment evidence raised fact issues as to his claims for retaliation and age discrimination. However, before addressing Stewart's arguments as to the merits of summary judgment on these claims, we must review the trial court's rulings on appellees' objections to Stewart's summary judgment evidence. Then, we will review the trial court's decisions on appellees' motions for summary judgment.

### A. Propriety of Rulings on Stewart's Evidence Relating to Retaliation and Age Discrimination Claims

In the trial court, appellees made numerous objections to Stewart's evidence and moved to strike that evidence. Specifically, appellees made objections to individual paragraphs of the co-workers' affidavits and to Stewart's affidavit and the exhibits attached to it. However, the trial court did not address each objection. Rather, as noted above, the order granting in part the first motion for summary judgment states only that "to the extent any summary judgment evidence is mere conclusion or based upon speculation it cannot be considered for purposes of the summary judgment record."

Although appellees told us in oral argument that this language is an implied ruling and amounts to a striking of the evidence, we cannot agree. As explained in *Allen ex rel. B.A. v. Albin*, 97 S.W.3d 655, 662–663 (Tex.App.-Waco 2002, no pet.), there is a split of authority whether, pursuant to rule of appellate procedure 33.1(a)(2)(A), an objection to summary judgment evidence can be preserved by an implicit ruling without a written, signed order. *See* Tex.R.App. P. 33.1(a)(2)(A) (providing that one of the prerequisites to presenting a complaint for appellate review is the trial court "ruled on the request, objection, or motion, either expressly or implicitly"). We agree with the Waco

Court of Appeals that the "better practice is for the trial court to disclose, in writing, its rulings on all objections to summary-judgment evidence at or before the time it enters the order granting or denying summary judgment." *Allen ex rel. B.A.*, 97 S.W.3d at 663 (quoting *Dolcefino v. Randolph*, 19 S.W.3d 906, 926 (Tex.App.-Houston [14th Dist.] 2000, pet. denied)); *see Utils. Pipeline Co. v. Am. Petrofina Mktg.*, 760 S.W.2d 719, 723 (Tex.App.-Dallas 1988, no writ) (holding that "an order of a trial court sustaining an objection to summary judgment evidence to be effective must be reduced to writing, signed by the trial court and entered of record"). Accordingly, we reject appellees' argument that the statement by the trial court is an implied ruling that amounts to a striking of Stewart's evidence.

■ On appeal, appellees argue that the exhibits attached to Stewart's affidavit are improper because they are vague and conclusory, not based on personal knowledge, and contain hearsay statements. Failure to affirmatively show that the affiant had personal knowledge is a defect in form and must be preserved in the trial court. *Grand Prairie Indep. Sch. Dist. v. Vaughan*, 792 S.W.2d 944, 945 (Tex.1990) (per curiam); *see* Tex.R. Civ. P. 166a(f). Objections that a document contains hearsay is also a defect of form. *St. Paul Ins. Co. v. Mefford*, 994 S.W.2d 715, 721 (Tex. App.-Dallas 1999, pet. denied). Accordingly, by failing to obtain a ruling on their objections as to lack of personal knowledge and hearsay in the trial court, appellees cannot raise these issues on appeal.

■ However, defects in the substance of the opposing party's evidence are not waived, and can be raised for the first time on appeal. *Choctaw Props., L.L.C. v. Aledo I.S.D.*, 127 S.W.3d 235, 241 (Tex.App.-Waco 2003, no pet.). Substantive defects are those that leave the evidence legally insufficient, and include affidavits which are nothing more than legal or factual conclusions. *Hou–Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103, 112 (Tex.App.-Houston [14th Dist.] 2000, no pet.).

■ The objections premised on the alleged conclusory nature of the statements made by the co-workers in their affidavits are made on appeal by simply quoting one or more sentences from particular paragraphs and stating that "the following 'evidence' is improper because it is conclusory and/or is not based on personal knowledge." As to Stewart's affidavit and exhibits, the "conclusory" objections are made by identifying only the number of particular paragraphs and exhibits. No description of the particular basis for the objection is made. As to all of appellees' objections to these affidavits and attached exhibits, we cannot tell how, according to appellees, these statements are "conclusory." These objections are not sufficiently specific. *See Womco, Inc. v. Navistar Int'l Corp.*, 84 S.W.3d 272, 281 n. 6 (Tex. App.-Tyler 2002, no pet.) (holding objection that individual paragraph of affidavit "contains unsubstantiated legal conclusions" is itself conclusory because it fails to identify which statements in individual paragraph are objectionable or offer any explanation to trial court as to precise bases for objection); *Garcia v. John Hancock Variable Life Ins. Co.*, 859 S.W.2d 427, 434 (Tex.App.-San Antonio 1993, writ denied) (holding objection that individual paragraphs contained "speculation" and "conclusion" failed to give grounds to support inadmissibility argument). Accordingly, we reject appellees' arguments that Stewart's evidence is substantively defective. Consequently, we may consider this evidence in our review of the propriety of summary judgment.

## B. Propriety of Summary Judgment on Retaliation and Age Discrimination Claims

Chapter 21 of the Labor Code is modeled after federal civil rights law. One express purpose of chapter 21 of the Labor Code is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." TEX. LAB.CODE ANN. § 21.001(1) (Vernon 1996). Chapter 21 of the Labor Code purports to correlate "state law with federal law in the area of discrimination in employment." *Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 485 (Tex. 1991). Thus, we look to analogous federal precedent for guidance when interpreting chapter 21 of the Labor Code. *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex.2001); *NME Hosps., Inc., v. Rennels*, 994 S.W.2d 142, 144 (Tex.1999).

Because this is an appeal from a summary judgment, we apply the burden-shifting analysis established by the United States Supreme Court. *Wal–Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (per curiam); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 24 (Tex.2000) (per curiam)). Under *McDonnell Douglas,* a plaintiff must first establish a prima facie case. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 n. 3, 124 S.Ct. 513, 157 L.Ed.2d 357 (2003). The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action. *Id.* (citing *McDon-nell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817, 36 L.Ed.2d 668). If the employer meets this burden, the presumption of disparate treatment disappears, but the plaintiff can still prove disparate treatment by, for instance, offering evidence demonstrating that the employer's explanation is a pretext for discrimination. *Id.* (citing *Reeves*, 530 U.S. at 143, 120 S.Ct. 2097, 147 L.Ed.2d 105). Texas courts use the burden-shifting analysis in age discrimination and retaliation cases under chapter 21 of the Labor Code. *See Romo v. Tex. Dep't of Transp.*, 48 S.W.3d 265, 269 (Tex.App.-San Antonio 2001, no pet.).

### 1. Retaliation

In his first issue, Stewart contends that the trial court erred in granting summary judgment on his claim for retaliation because he presented evidence raising a fact issue on this claim. Stewart alleged that, after he filed his first amended petition, Sanmina L.P. brought a retaliatory counterclaim against him for allegedly violating the Proprietary Information and Inventions Agreement and that appellees and/or their attorneys wrote threatening letters to Stewart's new employer in an apparent attempt to have him terminated or disciplined by the new employer.

Appellees moved for summary judgment on the retaliation claim on the following grounds: (1) Stewart did not exhaust his administrative remedies before asserting his retaliation claim, and (2) Stewart could not present evidence that Sanmina's allegedly retaliatory conduct adversely affected his employment relationship with Sanmina or the new employer. Specifically in regard to the second ground, appellees contended that Stewart could not show an essential element of a prima facie case of retaliation, that is, an ultimate employment decision; Stewart admitted that Sanmina's counterclaim and a letter to Stewart's new

employer regarding continuing obligations under the pre-hire nondisclosure agreement had no effect on his employment with Sanmina or the new employer; a former employer's counterclaim cannot form the basis for a retaliation clam as a matter of law; and the alleged retaliatory acts were privileged and cannot form the basis of a retaliation claim.

### a. Applicable Law

Section 21.055 of the Labor Code provides that an employer commits unlawful retaliation if the employer discriminates against a person who: (1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing. TEX. LAB.CODE ANN. § 21.055 (Vernon 1996). To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a protected activity, (2) an adverse employment action occurred, and (3) there was a causal connection between participation in the protected activity and the adverse employment decision. *Romo*, 48 S.W.3d at 272. An employer's filing of a counterclaim after the employee has already been discharged cannot support a retaliation claim. *Hernandez v. Crawford Bldg. Material Co.*, 321 F.3d 528, 532–33 (5th Cir.2003) (per curiam) (distinguishing Fifth Circuit's strict interpretation of Title VII's requirement of "ultimate employment decision" from interpretation of other circuits), *cert. denied*, 540 U.S. 817, 124 S.Ct. 82, 157 L.Ed.2d 34 (2003).

### b. Discussion

On appeal, Stewart argues that *Shafer v. Dallas County Hospital District*, 76 FEP Cases 1555 (N.D.Tex.1997), supports his claim that filing a counterclaim constitutes an adverse employment action. However, this issue has been decided against Stewart in *Hernandez. See Hernandez*, 321 F.3d at 532 n. 3 (citing *Shafer* as an unreported case and overruling it by implication). Accordingly, we conclude that *Shafer* is no longer sound authority. Because the summary judgment can be supported on grounds that a former employer's counterclaim cannot form the basis for a retaliation claim as a matter of law, thus negating an element of Stewart's prima facie case, we conclude the trial court did not err in granting summary judgment on Stewart's claim for retaliation on this ground under the traditional standard. We need not address Stewart's other arguments on this issue. Stewart's first issue is resolved against him.

### 2. Age Discrimination

In his second issue, Stewart argues the trial court erred in granting summary judgment on his claim for age discrimination because he presented evidence creating a fact issue. Appellees moved for summary judgment on this claim on grounds that (1) Stewart could not establish a prima facie case; (2) appellees articulated a legitimate and nondiscriminatory reason for Stewart's layoff; (3) Stewart could not demonstrate that the reason for his discharge was a pretext for unlawful discrimination; and (4) Stewart was not "clearly better qualified" than the retained employees as a matter of law.

### a. Applicable Law

Sections 21.051 and 21.101 of the Labor Code provide that an employer commits an unlawful employment practice if because of age the employer discharges an individual forty years of age or older. TEX. LAB.CODE ANN. §§ 21.051(1), .101 (Vernon 1996); *see id.* § 21.125(a) (Vernon Supp.2004–05) (describing what complainant must show to prevail). In a reduction-

in-force case, a plaintiff makes out a prima facie case by showing: (1) that he is within the protected age group; (2) that he has been adversely affected by the employer's decision; (3) that he was qualified to assume another position at the time of the discharge; and (4) "evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir.1996) (quoting *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 812 (5th Cir.1991)); *see Russo v. Smith Int'l, Inc.*, 93 S.W.3d 428, 435 (Tex.App.-Houston [14th Dist.] 2002, pet. denied).

▮▮▮ A plaintiff challenging his termination can ordinarily establish the third prong of a prima facie case of age discrimination by showing that he continued to possess the necessary qualifications for his job at the time of the adverse action, by which is meant that the plaintiff had not suffered physical disability or loss of a necessary professional license or some other occurrence that rendered him unfit for the position for which he was hired. *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1506 & n. 3 (5th Cir.1988). He can establish the fourth prong by showing that he was either (1) replaced by someone outside the protected class, (2) replaced by someone younger, or (3) otherwise discharged because of his age. *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir.1993).

▮▮▮ Once a prima facie case is made out by the discharged employee, the employer may rebut that claim by articulating a legitimate, nondiscriminatory reason for its decision. *Amburgey*, 936 F.2d at 813; *Anderson v. Taylor Publ'g Co.*, 13 S.W.3d 56, 59 (Tex.App.-Dallas 2000, pet. denied) (citing *Bodenheimer*, 5 F.3d at 957). A showing that a discharged employee was clearly better qualified than younger retained employees is one of the ways that a plaintiff can respond to the employer's reduction-in-work-force reason and show that a reduction in force was a mere pretext for age discrimination. *Nichols*, 81 F.3d at 42; *E.E.O.C. v. Manville Sales Corp.*, 27 F.3d 1089, 1096 n. 5 (5th Cir.1994); *Anderson*, 13 S.W.3d at 59. The evidence of relative qualifications must be more than merely subjective and speculative. *Nichols*, 81 F.3d at 41. It must be specific and comparative in nature. *Id.* (citing *Bodenheimer*, 5 F.3d at 959). Furthermore, the evidence must demonstrate that the decision to retain a younger worker instead of an older one was more than a bad business decision. *See Bodenheimer*, 5 F.3d at 959. The evidence must show a mistake of judgment large enough that one may wonder whether it was a mistake at all. *Amburgey*, 936 F.2d at 814.

### b. Discussion
### i. *Stewart's Prima Facie Case*

▮▮ First, we address whether Stewart met his burden respecting a prima facie case. Stewart argues that he met his summary judgment burden to establish a prima facie case by presenting summary judgment evidence showing: (1) he was born November 16, 1951, showing that he was over forty years' old on March 21, 2001 when (2) he was laid off; (3) he was qualified for the position; and (4) he was replaced by twenty-seven-year-old Christopher Dovidas as an account manager. Specifically, Stewart addressed his qualifications in his affidavit when he said that he had over fifteen years' experience as a manufacturer's representative before being hired by Sanmina; his 1999 job review noted his performance as "exceeds requirements" and his 2000 job review was "meets expectations"; and his sales totals

increased each year. We conclude Stewart's evidence raised a fact issue as to his prima facie case. *See Nichols,* 81 F.3d at 41 (plaintiff need only make "a very minimal showing" to establish prima facie case).

### ii. Appellees' Reason for Discharge

■ Second, we address appellees' claim that they had a legitimate, nondiscriminatory reason for discharge. To support their reason for Stewart's layoff as part of the March 2001 reduction in force, appellees presented Sitton's affidavit, in which he stated that he was asked by the vice president of sales of the cable division to identify one sales employee from the cable division for layoff.

Sitton stated that, in order to identify the employee for lay off, he "stack ranked" the sales employees in the cable division considering, among other factors, the employees' most recent performance evaluation, sales achievement, technical skills, attention to detail, accountability, ability to gain the attention of senior management decision-makers and manage sales relationships, and each employee's likelihood for future success. According to Sitton, Stewart ranked last in the sales group because: (1) Stewart was the only employee to receive a "needs improvement" in any of the nine performance categories measures on the last evaluation; (2) as noted in both 1999 and 2000 performance evaluations, Stewart's presentation skills were deficient; (3) Stewart did not generate any new non-Motorola account during his Sanmina employment, but relied exclusively on one account that appeared to be less viable; (4) Stewart demonstrated a limited aptitude for gaining the attention of senior purchasing decision-makers; (5) Stewart refused to take steps to improve his sales skills and technical knowledge; (6) Stewart had performed poorly at a

February 20, 2001 Motorola sales meeting; and (7) his annual base salary of $54,059.98 was relatively high. In addition, Sitton stated that Fujitsu complained about Stewart, he was removed from the Fujitsu account in Spring 2001 at Fujitsu's request, and Stewart's Motorola 3G account would not generate significant new revenue over the next few years, if at all, and there had been no 3G product-related sales to Motorola. Sitton stated, in addition, that he preferred sales representatives with program management experience because they generally demonstrate greater technical competence, possess superior multitasking skills, and have a greater understanding of Sanmina's and/or customers' internal manufacturing processes, procedures, and controls.

As to the employee hired on March 5, 2001, Chuck Steely, Sitton stated that his birthday was February 2, 1951. Steely was hired as a regional sales manager for the cable division's southeast region. He had over twenty-six years of electronic hardware and telecommunications equipment sales management in the southeast, with twelve companies, including Sanmina. Finally, Steely attended an average of forty plus hours per year in sales, marketing, and product training, and also received technical training.

The qualifications of retained employee Chris Dovidas were described by Sitton in his affidavit. Dovidas joined Sanmina in July 1999 as a program manager. Before joining Sanmina, Dovidas held both a sales and management position. Sitton rated Dovidas as "clearly exceeds expectations" in a November 10, 2000 performance evaluation as a program manager. Several days after this review, Sitton offered Dovidas a junior sales position in the sales division. Dovidas demonstrated exemplary organizational skills, persistence, and attention to detail. As of the March 2001

layoff, Dovidas managed sales relationships with three Lucent facilities, one Marconi facility, one Abbot Laboratory facility, and the Fujitsu account from which Stewart had been removed at Fujitsu's request. In Stewart's affidavit, he stated that Dovidas is twenty-seven years old.

As to a third retained employee, Danielle Baril, Sitton stated in his affidavit that she was hired in 2000 to service sales in the southeast region, where Sanmina had no presence and where Baril had begun developing sales relationships before working at Sanmina; Baril spoke French and had sales relationships in Paris and Quebec; and Baril's date of birth was August 11, 1949, and thus she was older than Stewart.

We conclude that, based upon this evidence, appellees have met their burden to raise a legitimate, nondiscriminatory reason for Stewart's discharge in the reduction in force.

### iii. Pretext for Discrimination

■ Third, since appellees raised a legitimate, nondiscriminatory reason for discharge, we address whether Stewart met his burden to raise a fact issue as to whether this reason was a pretext for discrimination. Stewart argues he met his burden by presenting evidence on whether appellees' articulated rationale for his layoff was pretext: (1) Sitton checked only "work force reduction" but identified six new reasons in his affidavit for Stewart's selection for layoff; (2) Dovidas, who was younger and less experienced than Stewart, was given Stewart's Motorola account, and Stewart was clearly better qualified than Dovidas; and (3) Stewart was clearly better qualified than Steely or Baril.

Stewart compared his qualifications to those of Dovidas in an exhibit to his affidavit. He stated that he received an "Innovator's Award" for outstanding customer service and a "Sales Excellence" award in his pre-Sanmina career. In contrast, Dovidas had not received any "prestigious awards." Also, Stewart received a letter of commendation from Motorola during his first year at Sanmina, one of only two outside sales representatives to receive any outstanding performance recognition from their customers. In contrast, Sitton admitted in deposition that Dovidas had not received a letter of commendation as an outside sales representative from any of his customers. In addition, Stewart received an overall rating of "exceeds expectations" in his 1999 job performance review, while Dovidas had yet to receive that rating as an outside sales representative at Sanmina. Stewart had over nineteen years in the telecom industry, with many contacts, while Dovidas had only four months outside sales experience in the telecom industry when he took over Stewart's accounts and no contacts at either Fujitsu or Motorola before he took over those accounts. Moreover, Stewart stated that Dovidas's inexperience and lack of training was shown by Dovidas's asking Stewart's help on reading a "print" from Fujitsu, an account which had been taken from Stewart and eventually assigned to Dovidas. Stewart also stated that he had program management experience because he performed both functions of sales and program manager during a six-month period when he worked without a program manager.

Appellees contend that the evidence they produced showed Stewart is not clearly better qualified than Dovidas as a matter of law. However, this Court does not weigh the evidence in order to determine if a fact issue was raised to bar a summary judgment. Rather, we have observed that the parties presented evidence which addressed the focal issue from opposite positions. Stewart produced evidence

regarding the elements challenged by appellees. That evidence was more than a scintilla.

■■■ We conclude this evidence as to Stewart being clearly better qualified raises an issue of fact as to whether appellees' reason for discharge was pretext for discrimination. *See id.* at 42; *Bodenheimer,* 5 F.3d at 959; *Amburgey,* 936 F.2d at 814. Under the burden-shifting analysis, Stewart has met his burden to come forward with evidence showing pretext. *See Nichols,* 81 F.3d at 41. If the plaintiff can raise a genuine issue of material fact as to whether he has established pretext, that will suffice to avoid summary judgment. *See id.; cf. Anderson,* 13 S.W.3d at 60–61. Accordingly, we conclude that Stewart met his burden to avoid summary judgment on his claim for age discrimination under either the traditional or no-evidence standard. Because Stewart's evidence raised a fact issue as to whether he was clearly better qualified than Dovidas, we need not address his other arguments as to pretext. We resolve Stewart's second issue in his favor.

## V. BREACH OF CONTRACT OR QUANTUM MERUIT CLAIMS

In his third issue, Stewart contends that the trial court erred in granting summary judgment in appellees' favor on his claims for nonpayment for past and future sales commissions and for an automobile allowance, a benefit allowance, and reimbursement of a cellular telephone bill.

In his third amended petition, Stewart claimed appellees owed him certain amounts: (1) sales commissions, an auto allowance, a benefit allowance, and cellular telephone bill for October through December 2000; (2) sales commissions for January through March 2001 based on the commission pay plan; (3) sales commissions

beginning in fiscal year 2002 and for the next five years on projects he brought in on the Motorola account; and (4) sales commissions of $130 per year on another major business opportunity with the 3G project at Motorola.

In their second motion for summary judgment, appellees argued they were entitled to summary judgment on these claims. First, appellees contended that the undisputed evidence demonstrated that, to earn a commission for a sale: (1) Stewart had to personally generate the sale; (2) Sanmina had to receive payment on the sale; (3) Stewart had to be employed at the time the payment was received; and (4) Stewart had to be employed for the entire fiscal month in which the payment was received. Appellees asserted that there were no sales which met these criteria for which Stewart was unpaid. Second, appellees contended that Stewart's claims for future commissions were barred because employment was a condition of earning commissions. Third, appellees contended Stewart's claim was barred by the Statute of Frauds. Fourth, appellees contended Stewart's quantum meruit claim failed as a matter of law as neither Stewart nor appellees could have had a reasonable expectation of any payment to Stewart.

In response, Stewart argued that his evidence disputed appellees' claims that no commission or expenses were due and owing. Appellees objected to Stewart's evidence, and the trial court expressly overruled appellees' objections. In a conditional cross-point, appellees contend the trial erred in overruling their objections.

### A. Propriety of Rulings on Stewart's Evidence Relating to Breach of Contract or Quantum Meruit Claims

#### 1. Applicable Law

We apply an abuse-of-discretion standard in reviewing whether a district court

erred in admitting or excluding evidence. *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex.1995). We will reverse only when we find that the trial court "acted in an unreasonable or arbitrary manner," *Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 226 (Tex.1991), or "without regard for any guiding rules or principles." *Owens–Corning Fiberglas Corp. v. Malone,* 972 S.W.2d 35, 43 (Tex. 1998) (quoting *Alvarado,* 897 S.W.2d at 754). If any legitimate basis exists to support a trial court's evidentiary ruling, then we must uphold the court's decision. *Owens–Corning,* 972 S.W.2d at 43; *State Bar v. Evans,* 774 S.W.2d 656, 658 n. 5 (Tex.1989).

## 2. Discussion

■ Stewart's summary judgment evidence regarding his breach of contract or quantum meruit claims and appellees' objections were:

"pay stubs" and other information relating to payment for sales commissions from January 1 through February 28, 2001 in the amount of $399.93; objection: not properly authenticated.

Stewart's supplemental affidavit explaining amounts owed; objections: "lacks foundation, is conclusory, speculative, does not affirmatively demonstrate the affiant's competency to testify as to the matters stated ... and clearly contradicts his prior deposition testimony and pleadings in this matter"; "purports to describe the content of other documents, rather than demonstrating the purported information in such documents."

a spreadsheet and "Schedule Share Reports" comprised of purchase orders for parts sold as of February 26, 2001; objection: not properly authenticated.

a worksheet showing sales completed for ten customers for October through December 2000 and calculating Stewart's commission; objections: not properly authenticated, lacks foundation, conclusory, speculative.

a cellular telephone bill dated February 19 through March 18, 2001; objection: not properly authenticated.

Appellees' objections in the trial court, which they repeat on appeal, are general, not specific. They merely refer to the documents in their entirety, make the statements quoted above, and cite rules of evidence and rule of civil procedure 166a(f). Appellees do not argue specifically how the documents are deficient. *See Womco, Inc.,* 84 S.W.3d at 281 n. 6; *Garcia,* 859 S.W.2d at 434. Accordingly, we conclude the trial court did not abuse its discretion in overruling appellees' objections, and we decide appellees' cross-point against them.

## B. Propriety of Summary Judgment on Breach of Contract or Quantum Meruit Claims

### 1. Applicable Law

■ A breach of contract occurs when a party fails to perform an act that it has expressly or impliedly promised to perform. *Methodist Hosps. of Dallas v. Corporate Communicators, Inc.,* 806 S.W.2d 879, 882 (Tex.App.-Dallas 1991, writ denied). The elements of a claim for breach of contract are: (1) existence of a valid contract; (2) performance or tentative performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damage resulting to the plaintiff from the breach. *Southwell v. Univ. of the Incarnate Word,* 974 S.W.2d 351, 354–55 (Tex.App.-San Antonio 1998, pet. denied).

■ To recover under quantum meruit, a claimant must prove that: (1) valuable services were rendered or materials furnished; (2) for the person sought to be

charged; (3) which services and materials were accepted by the person sought to be charged, used, and enjoyed by him; (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged. *Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex.1985). A party may recover under quantum meruit only when there is no express contract covering the services or materials furnished. *Vortt Exploration Co. v. Chevron, U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex.1990).

### 2. Discussion

#### a. Commissions

Appellees' summary judgment evidence included Stewart's deposition, in which he agreed that a commission plan applied to him during his employment with Sanmina; commissions became payable when Sanmina received payment; and, to be eligible for a month's commissions under the commission structure, he had to be employed at the end of the fiscal month in which the payments were received. Appellees' evidence also included the affidavit of Rebecca Halley, who stated that a total of $553,279.67 was paid by customers for sales on Stewart's accounts between October 1 and December 31, 2000; Stewart was due $1,383.20 for sales commissions on these sales; and this amount had been paid to Stewart. She also stated that the total amount paid by customers on Stewart's accounts from January 1 through February 28, 2001 was $159,969.10; under the applicable commission plan, Stewart

earned $399.93 commissions on these sales; and Stewart was paid that amount.

Stewart's summary judgment evidence included a worksheet, labeled "Exhibit B," showing commissions for ten specific customer accounts [2] for October to December 2000.[3] These sales totaled $829,622.03 in receipts from customers, on which Stewart calculated he was due $3,810.77 in commissions according to the plans percentages, of which $1,383.20 was paid, and $2,427.57 remained due. Exhibit B contains sales totals which, according to Stewart's response to the motion for summary judgment, came from "Bill Gould," who is not identified further in the record. Exhibit B also contains Stewart's handwritten calculations of his share of commissions and the automobile allowance, benefit allowance, and cellular telephone bill he claims are due him. At the bottom of the single page labeled "Exhibit B" are the words "SLP Confidential" and at the top are the words "D Stewart Q101 Sales Totals by Account 3–01–01." Appellees' evidence on this point was the affidavit of Rebecca Halley, a senior human resources generalist for Sanmina Texas L.P. Halley stated, in summary, the total sales and commissions on Stewart's customers and that Stewart had been paid all he was due.

This evidence addresses the commissions which Stewart claims were due before he was laid off. The parties have each provided to the court their respective versions of facts. Those facts are in conflict. On the points challenged or addressed by appellees, Stewart's evidence was more than a scintilla. Accordingly, we conclude Stewart's evidence of the sales

---

2. These "customers" are identified as: AIR100; APW101; FRE100; CTL100; CTL200; FLX100; ETA100; MOT400; MOT100D; and MOT100S.

3. In an affidavit attached to appellees' second motion for summary judgment, Stewart identifies this amount as due from the quarter October to December 2000, although this information is not found in Stewart's evidence attached to his response.

totals and commissions due raises an issue of fact regarding nonpayment of past commissions on these ten specific customer accounts for October through December 2000.

█ Stewart's summary judgment evidence also included his supplemental affidavit, in which he explained how he calculated the commissions due him. As an exhibit to his affidavit, he attached an Excel spreadsheet which showed the calculation of commissions due as of February 26, 2001 based on a February 26, 2001 Schedule Share Report, which was also attached. According to Stewart, the commission figures were provided to him by his supervisor Brian Cowell. These commissions covered January through February 28, 2001 and were due on "pending sales as of termination date ... which Sanmina received payments for after [Stewart] left" and which are due Stewart "as an equitable matter." The total amount claimed is $40,796.58.

█ This amount relates to receipts not yet received before Stewart was laid off. The parties' contract, that is, the commission payment plan, expressly addressed Stewart's entitlement to commissions and showed conclusively that Stewart could not receive commissions for sales not made and collected before his termination. No "equitable" claim is available on the basis of quantum meruit where the contract addresses the entitlement to recovery of commissions. *See Vortt Exploration Co.*, 787 S.W.2d at 944. Accordingly, Stewart failed to raise a fact issue as to his equitable claim to these amounts. Moreover, Stewart did not present any evidence or argument as to any commission amounts owed for sales made after February 28, 2001. Accordingly, Stewart failed to raise a fact issue as to nonpayment of commissions due after he left employment.

### b. Automobile Allowance and Benefit Allowance

█ In her affidavit, Halley stated that Stewart was entitled to an automobile allowance and a benefit allowance which together totaled $214.62 for each full pay period he was employed; it was Sanmina's policy and practice not to pay this amount for partial pay periods worked; Stewart was paid these allowances up through and including February 2001; and Stewart was entitled to no further payment.

Attached to Stewart's response are his earnings statements for the pay periods ending February, 23, 2001, and March 3, 2001. The first statement ending February 23, 2001, shows payment for the automobile allowance and the benefit allowance. The second statement shows a partial pay period, and no payments for these amounts are listed. It appears that, on this record, an automobile allowance and a benefit allowance were paid, except for the period covered by the March 3, 2001 earnings statement. However, none of Stewart's evidence addressed Sanmina's policy for nonpayment for partial pay periods as articulated by Halley. Accordingly, Stewart failed to raise a fact issue as to nonpayment of these amounts.

### c. Cellular Telephone Bill

█ In her affidavit, Halley stated that Sanmina's policy and practice were to reimburse employees for reasonable and necessary cellular telephone calls if the bills were submitted on a timely basis and that Sanmina had reimbursed Stewart for all cellular telephone costs he had submitted. Attached to Stewart's response as an exhibit is a cellular telephone bill, dated February 19 through March 18, 2001. Stewart said it was unpaid. However, Stewart did not contend that he had timely submitted the bill and Sanmina had refused to pay.

Thus, Stewart failed to raise a fact issue as to nonpayment of cellular telephone costs.

### d. Conclusion as to Breach of Contract or Quantum Meruit Claims

For the reasons above, we conclude that Stewart raised a fact issue as to his claims for breach of contract for failure to pay sales commissions for the period October through December 2000. Accordingly, we conclude that summary judgment under the traditional or no-evidence standard on this claim was improper, and we resolve Stewart's third issue in his favor to this extent. On all other breach of contract or quantum meruit claims, Stewart failed to raise an issue of fact. Accordingly, we conclude that summary judgment under the traditional or no-evidence standard on all other breach of contract or quantum meruit claims was proper. We resolve Stewart's third issue against him as to these claims.

### VI. CONCLUSION

Because of our disposition of Stewart's second and third issues, we reverse in part (1) the "Amended Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment" and (2) the "Order Granting Defendants' Second Motion for Summary Judgment and Final Judgment" as to the claims against the Sanmina corporate entities for age discrimination and for breach of contract for failure to pay sales commissions on October to December 2000 sales and remand those claims to the trial court for further proceedings.

In all other respects, summary judgement is affirmed.