# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00198-CV

**L. Ray Calhoun & Co., Appellant**

**v.**

**Railroad Salvage & Restoration, Inc., Appellee**

### FROM THE COUNTY COURT AT LAW NO. 1 OF HAYS COUNTY
### NO. 10933-C, HONORABLE HOWARD WARNER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

L. Ray Calhoun & Co. (Calhoun) filed suit in Texas against Railroad Salvage & Restoration, Inc. (RSR), a Missouri corporation, for breach of contract. The contract that is the subject of the suit called for Calhoun to transport scrap railroad materials from San Antonio, Texas, to Joplin, Missouri. RSR filed a special appearance, claiming that it was not subject to the jurisdiction of the Texas courts. After a hearing, the trial court granted RSR's special appearance and dismissed the suit. For the reasons set forth below, we affirm the trial court's order granting RSR's special appearance.

### BACKGROUND

Calhoun is a railroad service contractor that carries out various projects related to the railroad, including the collection and disposal of materials from abandoned railroad tracks. RSR is in the business of recovering scrap metal. In April 2006, an employee of RSR who was in Texas at

the time, Robert Weston, called L. Ray Calhoun (Ray), the owner of Calhoun. Weston was in Texas trying to locate scrap metal that could be hauled from Texas to RSR in Joplin, Missouri. The parties dispute some of the substance of the phone conversation that occurred between Weston and Ray, but they at least agree that the two men discussed the possibility of Calhoun hauling scrap metal from Texas to Missouri for RSR.

RSR filed two affidavits in the trial court in support of its special appearance, one from Weston, an employee of RSR, and the other from G.W. Jackson, an officer of RSR. In Weston's affidavit, he explained the purpose of his phone call to Ray and the events that occurred during and after the call:

> I contacted Ray Calhoun while I was in Sugarland, Fort Bend County, Texas, because I was told he might know the whereabouts of a particular person in Texas I needed to speak with. Mr. Calhoun asked me what business I was involved in, and when I told him, he said the person I was looking for was not the best person for the job, and he offered to haul the scrap metal. I told him that I could not make any agreements with him, and that if he wanted to offer his services, he should contact [RSR] in Joplin, Missouri and speak with Mr. G.W. Jackson. I made it clear to Mr. Calhoun that I had no authority to make contracts or agreements for [RSR] regarding the hauling of scrap metal. Later Mr. Calhoun told me he contacted Mr. Jackson in Missouri, and Mr. Calhoun faxed me an agreement while I was at a hotel in Sugarland, Fort Bend County, Texas. I received authorization from Mr. G.W. Jackson in Joplin, Missouri to proceed with the agreement.

Weston ultimately signed the agreement, and underneath his signature, wrote "Per G.W. Jackson." Jackson's affidavit confirmed Weston's representations regarding the circumstances leading up to the signing of the contract.

At the hearing on RSR's special appearance, Ray testified that Weston called him because he wanted to speak to him specifically. When RSR's attorney questioned whether Weston was calling to locate someone else, Ray responded, "I don't—that was discussed. I don't remember that. The bottom line was we agreed to do what he asked us to do." Ray also testified that Weston told him that he had authority to make agreements but that he wanted Ray to call Jackson to have Jackson review the agreement and make sure it was satisfactory.

Under the agreement, Calhoun was to remove and disassemble an abandoned railroad track in San Antonio, salvage the parts of the track, load the material onto trucks, and transport the material to Missouri. Calhoun ultimately salvaged material and transported it to Missouri, but a dispute arose as to whether it did so in accordance with the contract. Calhoun filed suit against RSR, alleging that RSR failed to pay the full amount due for the project. RSR filed a special appearance, and the trial court held a hearing. After the hearing, the trial court granted RSR's special appearance and filed findings of fact accepting RSR's version of the facts as set forth in the affidavits of Weston and Jackson. This appeal followed.

## DISCUSSION

*Evidentiary Challenges*

As an initial matter, we address Calhoun's objections to the affidavits filed in support of RSR's special appearance. Calhoun argues that the affidavits are not part of the appellate record because RSR failed to offer them into evidence at the hearing, and alternatively, that one of the affidavits includes legal conclusions that should not be considered. We address these objections

3

initially because Calhoun's sole issue on appeal, whether RSR is subject to personal jurisdiction in Texas, relies in part on the contested evidence.

Calhoun contends that the trial court erred in considering the affidavits of both Weston and Jackson because RSR never offered them into evidence. However, it is undisputed that the affidavits were attached to RSR's special appearance and filed in the trial court more than a month before the hearing. Further, Calhoun does not point to, and we have not found, any authority for the proposition that affidavits attached to a special appearance and filed in the trial court well before the hearing must be formally offered into evidence at the hearing. A trial court determines a special appearance on the basis of the pleadings, stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony. *See* Tex. R. Civ. P. 120a(3). Nothing in rule 120a(3) requires that affidavits filed in support of a special appearance must then be formally introduced into evidence at the hearing. Because we know of no authority to support Calhoun's contention, we overrule this objection on appeal.

Calhoun also argues that the trial court erred in declining to strike six provisions containing legal conclusions in Jackson's affidavit. The provisions of which Calhoun complains are the following:

> Furthermore, [Calhoun] has not pled facts or legal justification to support an assertion of personal jurisdiction over [RSR] by the Texas courts.

> The title to the scrap metal is transferred outside of Texas.

4

> [RSR] does not . . . purposefully direct any activities to or in Texas for any business venture or in order to sell products or services to [Calhoun] or to anyone else in Texas. [RSR] does not and did not purposefully avail itself of the laws of Texas. No action in Texas by [RSR] should have caused it to reasonably foresee being hailed into Texas Courts. [RSR] did not engage in a purposeful activity in Texas which is related to any cause of action or wrong incurred by [Calhoun].
>
> [RSR] sought to profit from servicing contracts with entities who are not Texas residents and any contract with Texas [was] merely incidental to those out-of-state agreements.
>
> [RSR] does not have minimum contacts with the State of Texas either specifically based on the facts of this case, or generally in the form of continuous and systematic contacts with Texas. Furthermore, it would be contrary to the notions of fair play and substantial justice for [RSR] to have to defend itself in Texas.
>
> [RSR] and its property is simply not amenable to process issued by the Courts of Texas. Therefore, [RSR's] special appearance should be granted and the suit against it dismissed.

In response to Calhoun's argument, RSR contends that Calhoun waived error on this objection by failing to obtain a ruling on it in the trial court. However, conclusory statements in an affidavit are substantively defective, and defects in the substance of an affidavit are not waived by the failure to obtain a ruling from the trial court.[1] *See Stewart v. Sanmina Tex. L.P.*, 156 S.W.3d 198, 207

---

[1] An objection that a statement in an affidavit is conclusory does not mean that conclusions based on stated underlying facts are improper. *Rizkallah v. Conner*, 952 S.W.2d 580, 587 (Tex. App.—Houston [1st Dist.] 1997, no writ). Such statements are proper in both lay and expert testimony. *Id*. An objectionable statement is one that is nothing more than an unsupported legal conclusion. *Id*. (citing *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex. 1991); *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984)). Such statements reduce to a legal issue a matter that should be resolved by relying on facts, and they amount to little more than the witness choosing sides on the outcome of the case. *Id*.

5

(Tex. App.—Dallas 2005, no pet.); *McMahan v. Greenwood*, 108 S.W.3d 467, 498 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Thus, substantive defects in an affidavit may be raised for the first time on appeal. *See Stewart*, 156 S.W.3d at 207; *McMahan*, 108 S.W.3d at 498. Nevertheless, even if we assume that the statements are legal conclusions and disregard them, a significant portion of the affidavit, including numerous relevant factual statements, still remains to be considered. Calhoun does not claim that the trial court should have stricken the entire affidavit, nor would such an action be proper.[2]  *See Ennis v. Loiseau*, 164 S.W.3d 698, 703-04 (Tex. App.—Austin 2005, no pet.) (upholding trial court's exclusion of only conclusory portions of special appearance affidavit). Because we rely on only the factual statements in the affidavit in determining whether RSR is subject to the jurisdiction of Texas courts, the alleged conclusory statements are extraneous to our analysis. Thus, we assume without deciding that the statements of which Calhoun complains should be excluded, and we consider only the remaining portions of the affidavit in our jurisdictional analysis. *See id*.

### Personal Jurisdiction

We turn now to Calhoun's sole issue, whether RSR is subject to personal jurisdiction in Texas. Specifically, Calhoun argues that it presented ample undisputed evidence to support an

---

[2]  Even at the hearing in the trial court, Calhoun conceded that the court could consider the remaining portions of Jackson's affidavit. After objecting to parts of the affidavit as conclusory, Calhoun's attorney stated: "The factual stuff is obviously properly before the [c]ourt and can be considered by the [c]ourt." Further, neither of the two cases cited by Calhoun on appeal suggests that a court should strike an entire affidavit merely because the affidavit contains some conclusory statements. *See Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984) (stating that conclusory summary-judgment affidavit "should have gone further and specified factual matters"); *Anchia v. DaimlerChrysler*, 230 S.W.3d 493, 499-500 (Tex. App.—Dallas 2007, pet. denied) (upholding trial court's exclusion of special-appearance affidavit because every statement but one was conclusory and remaining statement did not impact jurisdictional analysis).

exercise of the court's jurisdiction over RSR, and that RSR presented no evidence, or insufficient evidence, to support the court's decision to grant RSR's special appearance. Calhoun contends that RSR had sufficient minimum contacts with Texas arising out of the specific transaction at issue to be subject to the jurisdiction of Texas courts.

Whether a trial court properly granted or denied a special appearance is a question of law that we review de novo. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). We will affirm the trial court's determination on any legal theory supported by the evidence. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). However, in making a jurisdictional determination, the trial court must resolve necessary factual questions. *See BMC Software*, 83 S.W.3d at 794. Here, the trial court filed findings of fact that Calhoun does not challenge on appeal. When a trial court's findings of fact are unchallenged on appeal, they are entitled to the same weight as a jury verdict. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986). Each of them is binding on an appellate court unless the contrary is established as a matter of law or there is no evidence to support the finding. *Id*.

In this case, the trial court made the following nineteen findings of fact:

> 1. [RSR] was the only defendant sued by [Calhoun] in this case. [Calhoun] brought suit in a Texas court against [RSR] in its corporate capacity.
>
> 2. [RSR] is a nonresident of Texas, and is a corporate resident of Missouri. [RSR] is a Missouri corporation with its principal place of business and domicile in Joplin, Missouri.
>
> 3. [RSR] has never resided in Texas, registered to do business in Texas, held any license or permit issued by the State of Texas, owned or leased businesses, buildings, equipment, or had employees who resided in Texas.

4. [RSR] does not employ persons who reside in Texas, sell items directly to persons in Texas, render services to anyone in Texas, have a mailing address in Texas, or employ sales agents in Texas. It does not routinely make contracts in Texas.

5. [RSR] has never owned real estate in Texas, had a bank account in Texas, advertised in Texas, had a telephone book listing in Texas, made unsolicited calls to procure business in Texas, or sent unsolicited mailings in or to Texas.

6. [RSR] has never brought suit in Texas or previously been sued in Texas.

7. [RSR] has not purposefully directed any activities to or in Texas in order to sell products to [Calhoun] or anyone else.

8. [RSR] occasionally sends an employee to Texas to retrieve scrap metal pursuant to a contract between [RSR and] an entity that resides outside of Texas.

9. While temporarily in Texas, an employee of [RSR] called [Calhoun] to determine whether Ray Calhoun, [Calhoun's] owner, knew the whereabouts of a particular person.

10. [Calhoun], in that conversation, offered (through Mr. Ray Calhoun) to [RSR's] employee to perform the service of hauling scrap metal from Texas to Missouri.

11. [RSR's] employee told [Calhoun] to contact Mr. G.W. Jackson at [RSR's] corporate office in Joplin, Missouri, because the employee could not make agreements for [RSR].

12. [Calhoun] contacted G.W. Jackson (an officer of RSR) in Joplin, Missouri and offered its services to haul scrap metal to Joplin, Missouri.

13. [Calhoun] negotiated and consummated the agreement with Mr. G.W. Jackson to haul scrap metal to Missouri while Mr. G.W. Jackson was in Joplin, Missouri.

14. [Calhoun] drafted and offered its written confirmation of the agreement it had previously reached with Mr. G.W. Jackson and sent it to [RSR's] employee who was temporarily in Texas at the time.

15.   Mr. G.W. Jackson authorized Robert Weston to confirm the agreement reached in [Calhoun's] telephone call to [RSR's] officer, Mr. G.W. Jackson while Jackson was in Joplin, Missouri.

16. [Calhoun] transported scrap metal to Joplin, Missouri; however, the parties dispute whether [Calhoun] did so in accordance with the contract.

17. [Calhoun] demanded that it be paid in Texas.

18. [RSR] engaged in a single transaction with [Calhoun].

19.   The time and expense for [RSR] to have to travel to Texas to defend itself would be a severe and undue burden.

After reviewing the record, we conclude that there is evidence to support the trial court's fact findings in the affidavits of both Weston and Jackson and that contrary findings are not established as a matter of law.  Although portions of Ray's testimony at the hearing conflicted with some of the statements in the affidavits, the trial court is the sole judge of a witness's credibility and the weight that his testimony should be afforded, and we may not disturb a trial court's resolution of evidentiary conflicts turning on those factors.  *See Ennis*, 164 S.W.3d at 706.  Accordingly, the trial court's findings of fact are binding on this court.   *See McGalliard*, 722 S.W.2d at 696; *Davey v. Shaw*, 225 S.W.3d 843, 853 (Tex. App.—Dallas 2007, no pet.).

Taking the trial court's fact findings into consideration, we now address Calhoun's argument that RSR is subject to the jurisdiction of Texas courts.  In support of its argument, Calhoun relies primarily on the Texas long-arm statute, which states that a nonresident does business in Texas if it "contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in [Texas]." *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.042(1) (West 2007).

9

However, jurisdiction must not only be authorized by the Texas long-arm statute but must also comport with constitutional guarantees of due process. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex. 1990). The Texas long-arm statute reaches only as far as the federal Constitution permits. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991). Thus, we rely on precedent from the United States Supreme Court and other federal courts, as well as Texas decisions, to determine whether the assertion of personal jurisdiction is consistent with the requirements of due process. *BMC Software*, 83 S.W.3d at 795.

Personal jurisdiction over a nonresident defendant is constitutional when (1) the defendant has established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Id*. (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A nonresident defendant that has "purposefully availed" itself of the privileges and benefits of conducting business in the forum state has sufficient contacts to confer personal jurisdiction. *Id*. (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985)). A defendant should not be subject to jurisdiction based on random, fortuitous, or attenuated contacts. *Id*. (citing *Burger King*, 471 U.S. at 475).

The minimum contacts analysis includes two types of jurisdiction: specific and general. *Id*. Because Calhoun does not contend that general jurisdiction exists, we will confine our discussion to specific jurisdiction. To ensure compliance with the federal constitutional standard, Texas has designed its own formula for specific jurisdiction, which includes the following three factors: (1) the nonresident defendant must purposefully do some act or consummate some transaction in Texas, thus establishing minimum contacts with the forum; (2) that act or transaction

must be connected with or give rise to the cause of action; and (3) the exercise of jurisdiction must not offend traditional notions of fair play and substantial justice. *See Schlobohm*, 784 S.W.2d at 358. Thus, for specific jurisdiction to exist, the nonresident defendant's activities must be "purposefully directed" to the forum, and the litigation must result from injuries arising out of or relating to those activities. *Guardian Royal*, 815 S.W.2d at 228. The minimum contacts analysis for specific jurisdiction is somewhat narrow, focusing on the relationship among the defendant, the forum, and the litigation. *Id*.; *Schlobohm*, 784 S.W.2d at 357. The "touchstone" of our jurisdictional analysis is whether the nonresident purposefully availed itself of the benefits of conducting business in Texas. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005). Because specific jurisdiction requires a substantial connection between Texas, the lawsuit, and the defendant, not the plaintiff, we focus not on where the injury was felt but on the defendant's actions in Texas. *Id*. at 789-90.

RSR's actions in Texas include the following: temporarily sending an employee, Weston, to Texas to locate scrap metal and arrange for it to be hauled to Missouri; calling Calhoun in Texas to locate a third party and then discussing an agreement with Calhoun over the phone when Calhoun initiated the topic; discussing and confirming the agreement with Calhoun in a telephone call from Calhoun to Jackson, RSR's officer in Missouri; authorizing the agreement in a communication between Jackson in Missouri and Weston in Texas; signing the agreement in Texas; entering into a contract with a Texas resident; and paying Calhoun in Texas.

Calhoun cites to three cases in support of its position that RSR is subject to the trial court's specific jurisdiction. *See Bissbort v. Wright Printing & Publ'g Co.*, 801 S.W.2d 588,

11

589 (Tex. App.—Fort Worth 1990, no writ); *Beechem v. Pippin*, 686 S.W.2d 356, 361 (Tex. App.—Austin 1985, no writ); *N.K. Parrish, Inc. v. Schrimscher*, 516 S.W.2d 956, 959 (Tex. App.—Amarillo 1974, no writ). We find all of the cases distinguishable from the case before us. First, in all three cases, the nonresident defendants solicited business in Texas by placing telephone calls to Texas residents for the purpose of entering into business contracts with the Texas residents. Here, Weston called Calhoun but did not do so to solicit business. Rather, Weston called Calhoun in an effort to obtain the contact information for another person, and it was Calhoun who initiated a conversation about the possibility of the parties' entering into an agreement. Calhoun ultimately confirmed an agreement only after making a phone call to Jackson in Missouri.

Further, there were two more factors the court considered in *Beechem* that do not exist in this case: (1) the nonresident defendant had its insurance agent contact the Texas resident to arrange for insurance coverage on the equipment it was leasing from the Texas resident, and (2) the nonresident defendant admitted to owning real and personal property in Texas and to having previously conducted sales in Texas. 686 S.W.2d at 362-63.

Similarly, the court in *N.K. Parrish* also considered another factor not present in this case. There, the contract included language in bold type stating that the contract would be performed in Texas. 516 S.W.2d at 957. Here, there was no such language in the contract, and only part of the contract was performed in Texas.

Unlike the cases cited by Calhoun, RSR's actions in this case do not show that RSR purposefully availed itself of the benefits of conducting business in Texas. First, a single contract with a Texas resident does not automatically establish jurisdiction. *See Michiana*, 168 S.W.3d at

12

786. Second, sending payments to Texas or engaging in numerous telephone communications with a Texas resident about a contract are also not determinative. *See Alenia Spazio, S.P.A. v. Reid*, 130 S.W.3d 201, 213 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). The only other action RSR took in this case was to temporarily send Weston to Texas to locate scrap metal and arrange for it to be hauled from Texas to Missouri. Calhoun contends that Weston's presence in Texas constituted a "purposeful contact" with Texas and was alone enough to deny RSR's special appearance. However, Weston was only in Texas temporarily, and evidence in the record shows that RSR has never had an office in Texas, registered to do business in Texas, or employed people who reside in Texas. In addition, Weston did not contact Calhoun to solicit Calhoun's business. It was Calhoun who initiated a conversation with Weston about a possible contract between the parties. Further, even though Weston was in Texas to locate scrap metal and arrange for it to be hauled to Missouri, there is no evidence in the record to suggest that if not for Calhoun's offer, RSR would have contracted with another Texas resident to haul the scrap metal. In fact, Jackson's affidavit states that RSR's contacts with Texas relate solely to the retrieval of scrap metal "pursuant to agreements with entities who are not Texas residents." Thus, considering all of RSR's actions in Texas, we conclude that they do not constitute the minimum contacts necessary to subject RSR to the jurisdiction of Texas courts. *See Michiana*, 168 S.W.3d at 786; *Alenia Spazio*, 130 S.W.3d at 213. Because the record supports the trial court's determination that RSR lacked the minimum contacts necessary to support specific jurisdiction, we need not consider whether RSR's acts were connected to or gave rise to the cause of action or whether the assertion of jurisdiction would offend traditional notions of fair play and substantial justice. *See* Tex. R. App. P. 47.1. Accordingly, we overrule Calhoun's sole issue.

13

## CONCLUSION

Because we find no error in the trial court's evidentiary or jurisdictional determinations, we affirm the trial court's order.

_____

Diane M. Henson, Justice

Before Justices Patterson, Waldrop and Henson

Affirmed

Filed: February 5, 2009