NUMBER 13-04-445-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG






DANEVANG FARMERS COOPERATIVE 

SOCIETY, ET AL.
, Appellants,


v.



INDECO PRODUCTS, INC., Appellee.





On appeal from the 329th District Court


of Wharton County, Texas.






MEMORANDUM OPINION


 

Before Chief Justice Valdez and Justices Rodriguez and Garza


Memorandum Opinion by Justice Rodriguez


 This is an appeal from a no-evidence summary judgment granted in favor of
appellee Indeco Products, Inc. (Indeco), and against appellants, Danevang Farmers
Cooperative Society, Mark Hajovsky, Ledwig Partners, Walter Bowers, Gene W.
Hansen, Edward Gurecky, Jensen Farms, M & m Farms/Jenkins & Jenkins, Edgar
Beyer, Michael Plentl, Lawrence Petersen, R & J Wind, R & K Farms, Steffek Farms,
Joe Hickl, Delgado Farms, Jack Birkner, Sheldon Holub, Bruce Korenek, Blue Creek
Rice Farms, Dean Hansen, Donald Hickl, Joe L. Saha, Ronald Hickl, A.J. Kacer, Jojnnie
Carroll, Hoffpauir Farms, Joe Zalman, Jr., Richard Anderson, Greg Saha, Berglund
Farms, Johnny Brodsgaard, Allen Bacak, and Michael Steffek (collectively referred to
as Danevang). By one issue Danevang generally asserts that the trial court erred in
granting summary judgment in favor of Indeco on its claims for breach of contract,
violation of the Deceptive Trade Practices Act (DTPA), and products liability. We
reverse and remand.

I. Background

 Danevang filed the underlying suit against Indeco, asserting causes of action for
breach of contract, violation of the DTPA, and products liability. (1) Danevang alleged
that it had entered into a contract with Indeco for the sale of cotton module covers
manufactured by International Fiber Packaging (IFP) based on representations and
warranties made on the part of Indeco with respect to the IFP covers. Danevang
further alleged that Indeco substituted 153 defective Gerrard Cotton Topper 1995
covers for the IFP covers, which allegedly damaged 153 cotton modules.

 Indeco filed a no-evidence motion for summary judgment premised on each of
Danevang's causes of action. The trial court granted the motion and dismissed
Danevang's claims against Indeco. This appeal ensued. 

II. Standard of Review

 Pursuant to Texas Rule of Civil Procedure 166a(i), a defendant may move for
summary judgment on the ground that there is "no evidence of one or more essential
elements" of a plaintiff's claim. Tex. R. Civ. P. 166a(i). Once a defendant moves for
summary judgment on no-evidence grounds, the burden shifts to the plaintiff to
present evidence sufficient to raise a genuine issue of material fact on the challenged
element or elements. See id.; Branton v. Wood, 100 S.W.3d 645, 647 (Tex.
App.-Corpus Christi 2003, no pet.) (citing Tex. R. Civ. P. 166a cmt.). If the plaintiff
fails to satisfy its burden, the trial court must grant the motion. See Branton, 100
S.W.3d at 647 (citing Lampasas v. Spring Ctr., Inc., 988 S.W.2d 428, 433 (Tex
App.-Houston [14th Dist.] 1999, no pet.)).

 In reviewing a no-evidence summary judgment, we apply the same legal
sufficiency standard that is applied in reviewing directed verdicts. King Ranch, Inc. v.
Chapman, 118 S.W.3d 742, 750-51 (Tex. 2003); Zapata v. Children's Clinic, 997
S.W.2d 745, 747 (Tex. App.-Corpus Christi 1999, pet. denied). Therefore, we
review the evidence in the light most favorable to the nonmovant and disregard all
contrary evidence and inferences. King Ranch, 118 S.W.3d at 750; Zapata, 997
S.W.2d at 747 (citing Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711
(Tex. 1997); Moore v. Kmart Corp., 981 S.W.2d 266, 269 (Tex. App.-San Antonio
1998, pet. denied)). 

 "A no evidence point will be sustained when (a) there is a complete absence of
evidence of a vital fact, (b) the court is barred by rules of law or of evidence from
giving weight to the only evidence offered to prove a vital fact, (c) the evidence
offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence
conclusively establishes the opposite of a vital fact." King Ranch, 118 S.W.3d at 751
(quoting Merrell Dow Pharms., 953 S.W.2d at 711). Thus, a no-evidence summary
judgment is improperly granted if the nonmovant brings forth more than a scintilla of
probative evidence to raise a genuine issue of material fact. Id. (citing Tex. R. Civ. P.
166a(i); Wal-Mart Stores, Inc. v. Rodriguez, 92 S.W.3d 502, 506 (Tex. 2002)). More
than a scintilla of evidence exists when the evidence "rises to a level that would
enable reasonable and fair-minded people to differ in their conclusions." Id. (quoting
Merrell Dow Pharms., 953 S.W.2d at 711). Less than a scintilla of evidence exists
when the evidence is "so weak as to do no more than create a mere surmise or
suspicion" of a fact. Id. (citing Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex.
1983)). 

 When, as in this case, a trial court's order granting summary judgment does not
state the grounds upon which it was granted, the judgment must be affirmed if any
of the grounds advanced in the summary judgment motion are meritorious. Branton,
100 S.W.3d at 647 (citing Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989); Boren
v. Bullen, 972 S.W.2d 863, 865 (Tex. App.-Corpus Christi 1998, no pet.)).

III. Challenges to Summary Judgment Evidence

 On appeal, Indeco argues that Danevang's claims for breach of contract,
deceptive trade practices, and products liability fail because there is no evidence that
Indeco sold Danevang the covers in question-a fact that Indeco asserts must form the
basis of each of Danevang's claims. (2) Therefore, before we reach the merits of
Danevang's contentions, we will first address Indeco's challenges to the summary
judgment evidence.

 To support its assertion that Danevang presented no evidence of this basic fact,
Indeco (1) argues that Robert Wilkins, Danevang's manager, had "no personal
knowledge of Indeco selling any Gerrard covers to Danevang" on which to base his
affidavit, (2) suggests that Wilkins's affidavit presents nothing more than factual
conclusions that "Indeco sold the 153 cotton module covers in issue to Danevang,"
(3) asserts that the invoices provided by Danevang as summary judgment evidence
require a piling of inferences in order to raise a fact issue, which is not permitted under
Texas law, and (4) argues that the equal inference rule, when applied to the summary
judgment evidence in the instant case, prohibits the inference that it sold the covers
at issue to Danevang. (3)

A. Applicable Law

 An appellee may challenge the competency of the summary judgment evidence
on appeal. See, e.g., Stewart v. Sanmina Tex., L.P., 156 S.W.3d 198, 206-07 (Tex.
App.-Dallas 2005, no pet.). In order to challenge on appeal a defect in form in the
opposing party's evidence, the contention must have been properly preserved in the
trial court. Stewart, 156 S.W.3d at 207 (citing Grand Prairie Indep. Sch. Dist. v.
Vaughan, 792 S.W.2d 944, 945 (Tex. 1990) (per curiam); Tex. R. Civ. P. 166a(f)). 
However, a defect of substance in the opposing party's evidence can be raised for the
first time on appeal. Id. (citing Choctaw Props., L.L.C. v. Aledo I.S.D., 127 S.W.3d
235, 241 (Tex. App.-Waco 2003, no pet.)). The failure to affirmatively show that an
affiant had personal knowledge is an example of a defect in form. Id. "Substantive
defects are those that leave the evidence legally insufficient, and include affidavits
which are nothing more than legal or factual conclusions." Id. (citing Hou-Tex, Inc. v.
Landmark Graphics, 26 S.W.3d 103, 112 (Tex. App.-Houston [14th Dist.] 2000, no
pet.)).


B. Analysis 

1. Personal Knowledge of Affiant

 Indeco asserts that Wilkins had "no personal knowledge of Indeco selling any
Gerrard covers to Danevang," and therefore, his affidavit is incompetent summary
judgment evidence. However, based on the record, we conclude that Indeco failed to
preserve this contention for our review. 

 Because the failure to show that an affiant had personal knowledge on which
to base his affidavit is a defect of form, Indeco had to preserve this issue for review. 
See Stewart, 156 S.W.3d at 207; see also Tex. R. App. P. 33.1(a). In order to
preserve a complaint for appellate review, the record must show that (1) the complaint
was made to the trial court by a timely request or objection and (2) the trial court ruled
on the request or objection either expressly or implicitly. Tex. R. App. P. 33.1(a). 

 Although Indeco, in its reply to Danevang's response to its motion for summary
judgment, objected to the admission of the affidavit and argued that Wilkins lacked
personal knowledge of the statements contained in the affidavit, the record does not
reflect that the trial court ruled on Indeco's objection to the affidavit. (4) See id. at rule
33.1(a)(2). 

 Therefore, Indeco's contention that Wilkins's affidavit is incompetent summary
judgment evidence because it is not based on personal knowledge is not before us.

2. Conclusory Statement in Affidavit

 Indeco suggests that Wilkins's assertion in his affidavit that Indeco sold the 153
covers at issue to Danevang is purely conclusory. (5) We disagree.

 A conclusory statement "is one that does not provide the underlying facts to
support the conclusion." Rizkallah v. Conner, 952 S.W.2d 580, 587 (Tex.
App.-Houston [1st Dist.] 1997, no writ). Conclusory statements in affidavits are not
proper as summary judgment proof. See id. (citing Ryland Group, Inc. v. Hood, 924
S.W.2d 120, 122 (Tex. 1996)).

 In his affidavit, Wilkins stated that Indeco "delivered to Danevang Farmers
Cooperative Society (Danevang) the 153 defective covers manufactured by Gerrard
and marked 'Gerrard Cotton Topper 1995' which are the subject of this lawsuit." To
support this statement, Wilkins outlined the following in his affidavit: (1) Danevang
began ordering white IFP panel tarps from Indeco in 1998 and continued purchasing
them through 2001; (2) Danevang did not purchase tarps from any other supplier
during this time period; (3) Danevang discovered that Indeco had delivered to it a
number of tarps which were not the white IFP tarps that it had ordered; (4) the
delivery invoices demonstrated that Indeco had delivered to Danevang tarps described
by various names, including "White House Panel," "White End/ENC Premium," "White
Panel Topper," and "Wht/Wht Panel Cover"; (5) between 1991 and 1998 Danevang
purchased only green tarps; and (6) "The defective tarps in this case are white panel
tarps apparently manufactured by Gerrard in 1995. Therefore, they must have been
sold to Danevang between 1995 and 2001. Danevang purchased all of its tarps
during this time period from Indeco. Danevang only received white tarps from
Indeco." (6)

 Therefore, based on the outlined facts, we conclude that Wilkins's affidavit is
not conclusory because it provides the underlying facts to support his conclusion that
Indeco sold the 153 cotton covers at issue to Danevang. See id. 

3. Piling of Inferences

 Indeco asserts that in order for Danevang to have raised a fact issue based on
the invoices it submitted as summary judgment evidence, a trier of fact would have
to pile one inference upon another, which is not permitted under Texas law. See
Alashmawi v. IBP, Inc., 65 S.W.3d 162, 172 (Tex. App.-Amarillo 2001, pet. denied)
(citing Schlumberger Well Sur. Corp. v. Nortex Oil & G. Corp., 435 S.W.2d 854, 858
(Tex. 1968); Roth v. FFP Operating Partners, 994 S.W.2d 190, 197 (Tex.
App.-Amarillo 1999, pet. denied) (providing that it is a general rule in Texas that a
vital fact may not be established by piling one inference upon another)). Specifically,
Indeco contends that a trier of fact would have been required to infer from the invoices
that (1) Indeco sold Gerrard covers to Danevang and (2) such covers are the very ones
at issue or that (1) Indeco sold Gerrard covers to Danevang and (2) Danevang bought
the allegedly defective covers.

 However, Indeco's argument fails to consider that Wilkins's affidavit provides
evidence that (1) Indeco sold the Gerrard covers to Danevang and (2) such covers are
the ones at issue. Because the affidavit contains evidence of both facts, we cannot
conclude that a trier of fact would have to infer each of these facts, one on top of the
other, from the invoices, as suggested by Indeco, in order for Danevang to raise a fact
issue. Therefore, we conclude that the piling-of-inferences rule is not implicated by
the facts of this case. 

4. Equal Inference Rule

 Indeco contends that the equal inference rule forbids the inference that Indeco
sold the covers at issue to Danevang because it is no more plausible than the inference
that El Campo Co-op (7) bought the covers from its own supplier.

 The equal inference rule is a species of the no-evidence rule and provides that
an ultimate fact cannot be inferred from meager circumstantial evidence that could
give rise to any number of inferences, none more probable than another. See Wright
v. Wal-Mart Stores, Inc., 73 S.W.3d 552, 555 (Tex. App.-Houston [1st Dist.] 2002,
no pet.) (citing Lozano v. Lozano, 52 S.W.3d 141, 148 (Tex. 2001)); see also
Hammerly Oaks, Inc. v. Edwards, 958 S.W.2d 387, 392 (Tex. 1997) (citing Blount
v. Bordens, Inc., 910 S.W.2d 931, 933 (Tex. 1995)). When circumstances are
consistent with any possibility, and nothing shows that one is more probable than the
other, no fact can be inferred. Litton Indus. Prods., Inc. v. Gammage, 668 S.W.2d
319, 324 (Tex. 1984); Wright, 73 S.W.3d at 555 (citing Lozano, 52 S.W.3d at 148).

 Here, the record contains some evidence that directly links the covers at issue
to Danevang and demonstrates that Danevang purchased the covers at issue from
Indeco. In addition, the record contains an excerpt from Wilkins's deposition
testimony that indicates that Danevang invariably acquired some of El Campo Co-op's
covers and that El Campo Co-op invariably obtained some of Danevang's covers as a
result of the cotton distribution process; however, there is no evidence in the record
that directly links the covers at issue to El Campo Co-op. Nevertheless, based on this
excerpt, Indeco suggests that (1) it is no more plausible that the covers at issue
belonged to Danevang and were purchased from Indeco than it is that the covers at
issue belonged to El Campo Co-op and were purchased from its own supplier, and
therefore, (2) neither fact can be inferred from this evidence. See Wright, 73 S.W.3d
at 555; see also Hammerly Oaks, Inc., 958 S.W.2d at 392; Litton Indus. Prods., Inc.,
668 S.W.2d at 324. We disagree. 

 Because there is some evidence that directly links the covers at issue to
Danevang and shows that Danevang bought the covers at issue from Indeco, and the
evidence Indeco references merely suggests a link between the covers at issue and El
Camp Co-op, we conclude that it is more plausible that the covers at issue belonged
to Danevang and were purchased from Indeco than it is that the covers belonged to
El Campo Co-op. See Wright, 73 S.W.3d at 555; see also Hammerly Oaks, Inc., 958
S.W.2d at 392; Litton Indus. Prods., Inc., 668 S.W.2d at 324. Therefore, we
conclude that the equal inference rule does not prohibit the inference that Indeco sold
the covers at issue to Danevang.

 Accordingly, we may consider the challenged summary judgment evidence in
our review of the propriety of the granting of summary judgment.

IV. Propriety of Summary Judgment

 By its sole issue, Danevang asserts that the trial court erred in granting summary
judgment in favor of Indeco on its claims for breach of contract, violation of the DTPA,
and products liability.

A. Breach of Contract Claim 

 The elements of a breach of contract claim include (1) the existence of a valid
contract, (2) performance or tendered performance by the plaintiff, (3) breach of the
contract by the defendant, and (4) damages sustained by the plaintiff as a result of the
breach. Keszler v. Mem'l Med. Ctr. of E. Tex., 105 S.W.3d 122, 128 (Tex.
App.-Corpus Christi 2003, no pet.) (citing Guzman v. Ugly Duckling Car Sales of Tex.,
L.L.P., 63 S.W.3d 522, 528 (Tex. App.-San Antonio 2001, pet. denied)). A
defendant breaches a contract when it fails to perform an act that it has expressly or
impliedly promised to perform. See Stewart v. Sanmina Tex., L.P., 156 S.W.3d 198,
214 (Tex. App.-Dallas 2005, no pet.) (citing Methodist Hosp. of Dallas v. Corporate
Communicators, Inc., 806 S.W.2d 879, 882 (Tex. App.-Dallas 1991, writ denied));
Jones v. Star Houston, Inc., 45 S.W.3d 350, 355 (Tex. App.-Houston [1st Dist.]
2001, no pet.). In its motion for summary judgment, Indeco argued that Danevang
provided no evidence that Indeco breached the contract, that is, that it failed to
perform an act that it promised to perform. We disagree.

 Here, Wilkins's affidavit states the following, in pertinent part: 

 [Indeco] delivered to [Danevang] the 153 defective covers
manufactured by Gerrard and marked "Gerrard Cotton Topper 1995"
which are the subject of this lawsuit.


 . . . .


 Indeco contracted to provide IFP white panel tarps to Danevang. 
Indeco breached that promise by substituting at least 153 white tarps
from other manufacturers which were qualitatively different than the
promised IFP white panel tarps. The 153 tarps were defective and
damaged 153 cotton modules . . . . 


 Viewing the evidence in the light most favorable to Danevang, King Ranch, 118
S.W.3d at 750, we conclude that Wilkins's affidavit provides more than a scintilla of
evidence to raise a fact issue that Indeco promised to supply Danevang with white IFP
covers. Moreover, it provides more than a scintilla of evidence to raise a fact issue
that Indeco failed to perform its promise, and therefore breached the contract, by
delivering Gerrard Cotton Topper 1995 covers, which were allegedly defective and
allegedly damaged 153 cotton modules, instead of the promised IFP covers. See
Keszler, 105 S.W.3d at 128 (citing Guzman, 63 S.W.3d at 528); see also Stewart,
156 S.W.3d at 214 (citing Methodist Hosp., 806 S.W.2d at 882); Jones, 45 S.W.3d
at 355. 

 Accordingly, we conclude that summary judgment on Danevang's breach of
contract claim was improper. 

B. Deceptive Trade Practices Act Claim

 Pursuant to the DTPA, a consumer may maintain a cause of action where any
of the following acts on the part of a defendant constitutes a producing cause of
economic or mental anguish damages:

 (1) the use or employment by any person of a false, misleading, or
deceptive act or practice that is:


 (A) specifically enumerated in a subdivision of Subsection
(b) of Section 17.46 of this subchapter; and


 (B) relied on by a consumer to the consumer's detriment;


 (2) breach of an express or implied warranty; [or]


 (3) any unconscionable action or course of action by any person . . . .

Tex. Bus. & Com. Code Ann. § 17.50(a) (Vernon 2002 & Supp. 2006). In the
underlying suit, Danevang advanced its DTPA claim on each of these bases.

 In its motion for summary judgment, Indeco argued that Danevang presented
no evidence that (1) Indeco engaged in a false, misleading, or deceptive act that
Danevang relied on to its detriment, (2) Indeco breached an express or implied
warranty, (3) Indeco performed an unconscionable act, and (4) any alleged action
taken by Indeco was the producing cause of Danevang's alleged damages. We
disagree.

 Here, Wilkins's affidavit states the following, in relevant part:

 Danevang began ordering white panel tarps from Indeco in 1998,
based upon representations made by Indeco to Danevang regarding the
quality of these tarps. Indeco brought samples to Danevang in order to
demonstrate the quality of the tarps. These samples indicated that the
tarp would be a solid white panel cover manufactured by IFP, of a design
which would adequately protect the cotton modules. Based upon these
representations, Danevang began ordering white IFP panel tarps from
Indeco in 1998 and continued purchasing them through 2001.


 . . . . 


 . . . Danevang discovered . . . that Indeco delivered to Danevang
a number of tarps which were not the IFP white panel tarps it had
ordered.


 . . . . 


 Although Danevang believed all of the white panel tarps delivered
to it by Indeco were manufactured by IFP and were the white panel tarps
represented to it when it began ordering the tarps in 1998, the records
now reveal that Indeco substituted other tarps for a portion of these
deliveries. . . . 


 Indeco never informed Danevang that it was shipping substitute
white tarps which were qualitatively different from the original IFP tarps
represented to Danevang in 1998 when Danevang decided to begin
ordering white tarps.


 Indeco contracted to provide IFP white panel tarps to Danevang. 
Indeco breached that promise by substituting at least 153 white tarps
from other manufacturers which were qualitatively different than the
promised IFP white panel tarps. The 153 tarps were defective and
damaged 153 cotton modules, causing $120,000.00 in damages.


 Indeco never informed Danevang that it was substituting
qualitatively different tarps from other manufacturers. Indeco
misrepresented the quality of the tarps.


 Danevang relied upon Indeco to deliver the IFP White Panel tarps
that were originally represented to it and were the basis of the sales
relationship in 1998.


 Indeco expressly warranted that it would deliver IFP white panel
tarps to Danevang. Indeco failed to honor this warranty.


 Danevang had no particular knowledge, ability, experience, or
capacity to know the source of white panel tarps or the quality of the
construction process and materials used in making tarps. Danevang
relied upon Indeco to deliver the quality of tarps which it had specified
when the relationship began. Indeco took advantage of Danevang's lack
of knowledge regarding tarps by substituting tarps of an inferior quality.


 In addition, the excerpt from the deposition testimony of Danny Springs,
Indeco's corporate representative, which Danevang submitted to the trial court as
summary judgment evidence, included the following exchange:

 Q. And what did you find when you went down there?


 A. We - - he showed us some covers out on the yard and some
modules that, you know, basically didn't look real good, you
know, had water damage, you might say. He showed us a cover
that was later identified as a Gerrard cover that - - you know,
pretty bad shape, had - - it was identifiable by a tag and, oh, it had
a seam in it . . . .


 Q. Is the seam significant?


 A. In my opinion, yes, sir, I - - I do not and the National Cotton
Council does not recommend covers with a seam. It's just a
potential added problem.


 . . . . 


 Q. Do IFP module covers have a seam?


 A. No, sir.

 

 Based on the summary judgment evidence, we conclude that Danevang provided
more than a scintilla of evidence to raise a fact issue, King Ranch, 118 S.W.3d at 750,
that (1) Indeco engaged in a false, misleading, or deceptive act that Danevang relied
on to its detriment, (2) Indeco breached an express or implied warranty, (3) Indeco
performed an unconscionable act, and (4) that Indeco's alleged actions were the
producing cause of Danevang's alleged damages. See Tex. Bus. & Com. Code Ann. §
17.50(a).

1. False, Misleading, or Deceptive Act

 A false, misleading, or deceptive act includes, but is not limited to, representing
that goods or services are of a particular standard, quality, or grade, or that goods are
of a particular style or model, if they are of another. See id. § 17.46(b)(7). (8)

 Viewing the evidence in the light most favorable to Danevang, King Ranch, 118
S.W.3d at 750, we conclude that there is more than a scintilla of evidence to show
that (1) Indeco represented to Danevang that the covers it was to supply to Danevang
would be of a particular standard, quality, and model, namely the IFP model, but were
that of another, Tex. Bus. & Com. Code Ann. § 17.46(b)(7), and (2) Danevang relied
on the representations to its detriment. See id. § 17.50(a). Thus, we conclude that
there is more than a scintilla of evidence to raise a fact issue that Indeco violated the
DTPA by engaging in a false, misleading, or deceptive act that Danevang relied on to
its detriment. 

2. Breach of Warranty

 We note that although the DTPA prohibits the breach of an express or implied
warranty, it does not create warranties. Parkway Co. v. Woodruff, 901 S.W.2d 434,
438 (Tex. 1995) (citing Tex. Bus. & Com. Code § 17.50(a)(2)). Therefore, the
"warranties, both express and implied, actionable under the DTPA must be recognized
by the common law or created by statute." Id. (citing La Sara Grain Co. v. First Nat'l
Bank, 673 S.W.2d 558, 575 (Tex. 1984)).

 Viewing the evidence in the light most favorable to Danevang, King Ranch, 118
S.W.3d at 750, we conclude that there is more than a scintilla of evidence to show
(1) that, based on samples and representations, Indeco warranted to provide Danevang
with IFP covers of a certain quality that would adequately protect Danevang's cotton
modules, and (2) that Indeco breached its warranty. See, e.g., Tex. Bus. & Com. Code
Ann. §§ 2.313-.315 (Vernon 1994) (setting out elements of express and implied
warranties pursuant to the Texas Uniform Commercial Code). Therefore, we conclude
that there is more than a scintilla of evidence to raise a fact issue that Indeco violated
the DTPA by breaching an express or implied warranty. 

3. Unconscionable Act

 An unconscionable action is defined by the DTPA as "an act or practice which,
to a consumer's detriment, takes advantage of the lack of knowledge, ability,
experience, or capacity of the consumer to a grossly unfair degree." Id. §§ 17.45(5),
17.50(a).

 Viewing the evidence in the light most favorable to Danevang, King Ranch, 118
S.W.3d at 750, we conclude that there is more than a scintilla of evidence to show
that (1) Danevang lacked the knowledge, ability, experience, or capacity to "know .
. . the quality of the construction process and materials used in making tarps," and (2)
Indeco took advantage of Danevang's lack of knowledge, ability, experience, or
capacity to a grossly unfair degree by supplying Danevang with covers which allegedly
differed from those originally represented to it and which were allegedly defective, to
Danevang's detriment. See Tex. Bus. & Com. Code Ann. §§ 17.45(5), 17.50(a). 
Therefore, we conclude that there is more than a scintilla of evidence to raise a fact
issue that Indeco violated the DTPA by performing an unconscionable action. 

4. Producing Cause of Damages

 The appropriate standard of causation under the DTPA is that of producing
cause. Id. § 17.50(a); Riojas v. Lone Star Gas Co., 637 S.W.2d 956, 959 (Tex.
App.-Fort Worth 1982, writ ref'd n.r.e.). Producing cause means an efficient, exciting
or contributing cause. Riojas, 637 S.W.2d at 959 (citing Tex. Indemnity Ins. Co. v.
Staggs, 134 Tex. 318, 134 S.W.2d 1026 (1940)). Producing cause is sometimes
referred to as factual causation, and it lacks the element of foreseeability that is
required in cases of proximate causation. Id.

 Viewing the evidence in the light most favorable to Danevang, King Ranch, 118
S.W.3d at 750, and having concluded that there is more than a scintilla of evidence
to raise a fact issue that Indeco violated the DTPA by (1) engaging in a false,
misleading, or deceptive act relied on by Danevang, (2) breaching an express or implied
warranty, and (3) performing an unconscionable action, we further conclude that there
is more than a scintilla of evidence to raise a fact issue that such alleged actions were
the producing cause of Danevang's alleged damages in the underlying suit, namely, the
alleged damage to the 153 cotton modules in question. 

 Accordingly, we conclude that summary judgment on Danevang's DTPA claim
was improper. 

C. Products Liability Claim

 In Texas, section 402A of the Restatement (Second) of Torts governs claims
for strict liability. Am. Tobacco Co., Inc. v. Grinnell, 951 S.W.2d 420, 426 (Tex.
1997) (citing Firestone Steel Prods. Co. v. Barajas, 927 S.W.2d 608, 613 (Tex.
1996); McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787, 788-89 (Tex. 1967)). 
Section 402A provides as follows:

 (1) one who sells any product in a defective condition unreasonably
dangerous to the user or consumer or to his property is subject to liability
for physical harm thereby caused to the ultimate user or consumer, or to
his property if:

 

 (a) the seller is engaged in the business of selling such a
product, and

 

 (b) it is expected to and does reach the user or consumer
without substantial change in the condition in which it is
sold.


Restatement (Second) of Torts § 402A (1965). A product may be unreasonably
dangerous because of a defect in design, marketing, or manufacturing. Am. Tobacco,
951 S.W.2d at 426 (citing Caterpillar, Inc. v. Shears, 911 S.W.2d 379, 382 (Tex.
1995); Technical Chem. Co. v. Jacobs, 480 S.W.2d 602, 604-05 (Tex. 1972)).


1. Condition of the Covers

 In the underlying suit, Danevang advanced its products liability claim on the
basis of a design, marketing, and manufacturing defect. Indeco, in its motion for
summary judgment, appeared to argue that Danevang's products liability claim failed
on all bases because it provided no evidence that the covers at issue reached
Danevang without substantial change in the condition in which they were sold. See
Restatement (Second) of Torts § 402A (1965). Therefore, in order to overcome this
no-evidence challenge, Danevang had to provide more than a scintilla of evidence to
raise a fact issue that the covers at issue reached it without substantial change in the
condition in which they were sold. See Restatement (Second) of Torts § 402A
(1965); see also King Ranch, 118 S.W.3d at 751.

 Here, Wilkins's affidavit states the following, in pertinent part:

 The tarps purchased from Indeco were paletized [sic] and shrink
wrapped . . . .


 . . . . 


 Danevang used all of the tarps ordered and received from Indeco
in the condition they were delivered. In other words, Danevang simply
removed the shrink wrap, unfolded the tarps, and used them on cotton
modules. . . . 


 Viewing the evidence in the light most favorable to Danevang, King Ranch, 118
S.W.3d at 750, we conclude that there is more than a scintilla of evidence to show
that the covers purchased from Indeco were shrink wrapped when they were received
by Danevang and that "Danevang simply removed the shrink wrap, unfolded the tarps,
and used them on the cotton modules." Therefore, we conclude that there is more
than a scintilla of evidence to raise a fact issue that the covers at issue reached
Danevang without substantial change in the condition in which they were sold. 

2. Design Defect

 With respect to a products liability action in which a plaintiff alleges a design
defect, section 82.005 of the civil practice and remedies code requires that the
plaintiff prove by a preponderance of the evidence that there was a safer alternative
design. Tex. Civ. Prac. & Rem. Code Ann. § 82.005(a)(1) (Vernon 2005). A safer
alternative design means that a product design, other than the one actually used, in
reasonable probability:

 (1) would have prevented or significantly reduced the risk of the
claimant's . . . property damage . . . and


 (2) was economically and technologically feasible at the time the product
left the control of the manufacturer or seller by the application of existing
or reasonably achievable scientific knowledge.


Id. § 82.005(b).

 In its motion for summary judgment, Indeco argued that Danevang's design
defect claim failed because it presented no evidence that a safer alternative design
existed. See id. §§ 82.005(a)(1), (b). Therefore, in order for Danevang to overcome
this no-evidence challenge, Danevang had to provide more than a scintilla of evidence
to raise a fact issue that a safer alternative design existed that in reasonable probability
(1) would have prevented or significantly reduced the risk of Danevang's property
damage, and (2) was economically and technologically feasible at the time the product
left Indeco's control or the control of the manufacturer. See id. § 82.005(b).

 Here, as previously set out, the excerpt from Springs's deposition testimony
provides as follows, in relevant part:

 Q. And what did you find when you went down there?


 A. We - - he showed us some covers out on the yard and some modules
that, you know, basically didn't look real good, you know, had water
damage, you might say. He showed us a cover that was later identified
as a Gerrard cover that - - you know, pretty bad shape, had - - it was
identifiable by a tag and, oh, it had a seam in it . . . . 


 Q. Is the seam significant?


 A. In my opinion, yes, sir, I - - I do not and the National Cotton Council
does not recommend covers with a seam. It's just a potential added
problem.


 Q. And when we're talking about a seam, we're talking about a seam
lengthwise down the top of the module cover?


 A. Yes, sir.


 Q. Do IFP module covers have a seam?


 A. No, sir.


 In addition, as previously set out, Wilkins's affidavit states the following, in
pertinent part:

 [Indeco] delivered to [Danevang] the 153 defective covers
manufactured by Gerrard and marked "Gerrard Cotton Topper 1995"
which are the subject of this lawsuit.

 

 Danevang began ordering white panel tarps from Indeco in 1998
. . . . Indeco brought samples to Danevang in order to demonstrate the
quality of the tarps. These samples indicated that the tarp would be a
solid white panel cover manufactured by IFP, of a design which would
adequately protect the cotton modules. Based upon these
representations, Danevang began ordering white IFP panel tarps from
Indeco in 1998 and continued purchasing them through 2001.


 Indeco contracted to provide IFP white panel tarps to Danevang. . . .


 . . . .


 Danevang relied upon Indeco to deliver the IFP White Panel tarps
that were originally represented to it and were the basis of the sales
relationship in 1998.


 Indeco expressly warranted that it would deliver IFP white panel
tarps to Danevang. . . . 

 Furthermore, the invoices presented by Danevang, which indicate that white
covers were sold and shipped to Danevang by Indeco from 1998 to 2001, show that
the price per cover varied between $60.00 and $62.50 during that time.

 Viewing the evidence in the light most favorable to Danevang, King Ranch, 118
S.W.3d at 750, we conclude that Springs's deposition testimony, which indicates that
having a seam in a cover is significant because it is a potentially added problem,
provides more than a scintilla of evidence to show that the IFP cover, which is of a
seamless construction, as an alternative to the Gerrard Cotton Topper 1995 covers at
issue, which contain a lengthwise seam, in reasonable probability would have
prevented or significantly reduced the risk of damage to Danevang's cotton modules. 
See Tex. Civ. Prac. & Rem. Code Ann. § 82.005(b). We also conclude that Springs's
deposition testimony and Wilkins's affidavit provide more than a scintilla of evidence
to demonstrate that the IFP cover existed and was available at the time the Gerrard
covers at issue allegedly left Indeco's control, thereby satisfying the element that in
reasonable probability, it was a technologically feasible alternative to the Gerrard
covers at issue. See id.; see also Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 62
(Tex. 1983); Smith v. Aqua-Flo, Inc., 23 S.W.3d 473, 477-78 (Tex. App.-Houston
[1st Dist.] 2000, pet. denied). We further conclude that Wilkins's affidavit and the
invoices provide more than a scintilla of evidence to show that the IFP cover was an
economically feasible alternative during the time at issue. See Tex. Civ. Prac. & Rem.
Code Ann. § 82.005(b). Indeco had allegedly contracted to sell IFP covers to
Danevang. Danevang had allegedly contracted to purchase IFP covers from Indeco. 
Moreover, the price of the covers supplied by Indeco to Danevang ranged from $60.00
to $62.50, which indicates that there was no more than a $2.50 price difference
between the IFP covers and the Gerrard covers allegedly supplied by Indeco to
Danevang. Therefore, we conclude that there is more than a scintilla of evidence to
raise a fact issue that there was a safer alternative design to the Gerrard covers at
issue. 

 Thus, we conclude that summary judgment on Danevang's products liability
claim was improper.

V. Conclusion

 Accordingly, we reverse the judgment of the trial court and remand for further
proceedings.


 NELDA V. RODRIGUEZ

 Justice


Memorandum Opinion delivered and

filed this 12th day of October, 2006.



 



 
1. We note that Danevang also named Leggett & Platt, Inc. and Gerrard Wire Products Co. as
defendants in the underlying suit. However, Danevang filed a motion for partial dismissal with respect
to Leggett & Platt, Inc., which the trial court granted. In addition, following the trial court's grant of
summary judgment in its favor, Indeco filed a motion for severance to remove itself from the remaining
claims against Gerrard Wire Products Co. The trial court granted the motion for severance, thereby
making its grant of summary judgment in favor of Indeco a final appealable order. Thus, Indeco is the
only appellee before us in this appeal.
2. With respect to Danevang's breach of contract claim, Indeco argued, in its motion for summary
judgment, that Danevang provided "no evidence that . . . Indeco supplied the 153 defective covers. As
such, [Danevang has] failed to provide evidence of the critical element of 'failure to perform any promise
that forms all or part of an agreement.'" As to Danevang's deceptive trade practices claim, Indeco
asserted that "[w]ithout establishing that . . . Indeco sold . . . the covers that caused [Danevang's]
damages, [Danevang] cannot provide any evidence that Indeco misrepresented the quality or type of the
goods sold, breached any warranty, or that any act by Indeco was the producing cause of [Danevang's]
damages."


 We note, however, that Indeco, in its motion for summary judgment, did not specify how this
alleged basic fact affected Danevang's products liability claim.
3. To the extent that appellee also contends that Wilkins's affidavit is incompetent summary
judgment evidence because it does not (1) "set for [sic] such facts as would be admissible in evidence,"
and (2) "show affirmatively that the affiant is competent to testify to the matters stated therein," the
briefing is inadequate. See Tex. R. App. P. 38.2(a)(1) (providing that appellee's brief must conform to
the requirements of rule 38.1), 38.1(h) (providing that appellant's brief must contain a clear and concise
argument for the contentions made, with appropriate citations to authorities and to the record). 
Therefore, such contentions are not before us.
4. The summary judgment order read, in relevant part, as follows: "having reviewed the Motion
and Plaintiff's [Danevang's] response, as well as having heard arguments of counsel . . . the motion .
. . should be GRANTED." The summary judgment order makes no reference, either explicit or implicit,
to Indeco's reply to Danevang's response to its motion for summary judgment or to Indeco's objection
or request to strike Wilkins's affidavit. See Tex. R. App. P. 33.1(a)(2); see also Mowbray v. Avery, 76
S.W.3d 663, 689 n.45 (Tex. App.-Corpus Christi 2002, pet. denied) (citing Jones v. Ray Ins. Agency,
59 S.W.3d 739, 752-53 (Tex. App.-Corpus Christi 2001, pet. denied) (providing that "the mere grant
of a motion for summary judgment is not an implicit ruling on objections outside of a specific notion in
the record indicating that there was a ruling")). Therefore, the summary judgment order does not serve
to preserve this contention for appellate review.
5. Because a challenge to a conclusory statement in an affidavit is a challenge to a substantive
defect, which can be raised for the first time on appeal, we need not determine whether Indeco
preserved this contention for appellate review. See Stewart v. Sanmina Tex., L.P., 156 S.W.3d 198,
207 (Tex. App.-Dallas 2005, no pet.).
6. We note that Indeco suggests that there is an inconsistency between Danevang stating (1) it
ordered the covers at issue from Indeco, (2) that Indeco was its only supplier of white covers between
1998 and 2001, and (3) that the covers at issue were manufactured in 1995. However, we also note
that Indeco concedes that it is possible for the covers to have been manufactured in 1995 and not sold
until 1998 if the covers remained in inventory during this time period.
7. El Campo Co-op is located approximately ten miles from Danevang. Based on the record, it
appears that farmers in the area distribute their cotton to either Danevang or El Campo Co-op and that
some covers, at times, are interchanged.
8. We note that Danevang also asserted that Indeco performed a false, misleading, or deceptive
act by engaging in the following conduct: 


 (5) representing that goods or services have sponsorship, approval, characteristics,
ingredients, uses, benefits, or quantities which they do not have or that a person has
a sponsorship, approval, status, affiliation, or connection which he does not;


 . . . .

 

 (24) failing to disclose information concerning goods or services which was known at
the time of the transaction if such failure to disclose such information was intended to
induce the consumer into a transaction into which the consumer would not have entered
had the information been disclosed . . . .

 

Tex. Bus. & Com. Code Ann. §§ 17.46(b)(5), (24) (Vernon 2002 & Supp. 2006).


 However, because we have concluded that there is more than a scintilla of evidence to raise a
fact issue under subsection (b)(7), thereby precluding summary judgment on this basis, we need not
determine whether there is more than a scintilla of evidence to raise a fact issue under subsections (b)(5)
and (b)(24). See Tex. R. App. P. 47.1; see also Tex. Bus. & Com. Code Ann. §§ 17.46(b)(5), (7), (24);
17.50(a).